UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

FRANCISCO MALDONADO and BRIDGETTE
MALDONADO

                              Plaintiffs,

         - against -                    ORDER

HAPAG-LLOYD SHIPS, LTD., HAPAG-LLOYD    CV 2009-0018 (MDG)
A.G., HAPAG-LLOYD CONTAINER LINE GMBH,
NEW YORK CONTAINER TERMINAL, INC.,
HOWLAND HOOK CONTAINER TERMINAL, INC.,
M/V NEW ORLEANS EXPRESS,

                              Defendants.

- - - - - - - - - - - - - - - - - -X


     Plaintiffs Francisco and Bridgette Maldonado bring this action
against defendants New York Container Terminal, Inc. ("NYCT") and
Howland Hook Container Terminal, Inc., who will collectively be
called the "stevedore defendants;" against Hapag-Lloyd Ships, Ltd.,
Hapag-Lloyd A.G. and Hapag-Lloyd Container Line GMBH, who will
collectively be called the "vessel defendants;" and, in rem,
against M/V New Orleans Express.  Asserting claims under the
Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C.
§ 901 et seq., the general maritime law and New York state law,
Compl. (ct. doc. 1) at ¶ 10, plaintiffs seek damages arising from
injuries allegedly sustained by Mr. Maldonado while working as a
lasher aboard the vessel New Orleans Express, which is owned by the
vessel defendants.

     Both sets of defendants disclaim liability for any injuries
incurred by Mr. Maldonado and have asserted cross-claims against

each other for contribution or indemnification.  <u>See</u> Vessel
Defs.' Ans. (ct. doc. 9), ¶¶ 59-60, 77-78; Stevedore Defs.' Ans.
(ct. doc. 13), ¶¶ 51-53.  After all parties consented to trial
before me, <u>see</u> Consent to Jurisdiction (ct. doc. 25), both sets
of defendants moved for summary judgment as to plaintiffs'
complaint and the counterclaims asserted against them.  <u>See</u>
Stevedore Defs.' Summ. J. Mot. (ct. doc. 26); Vessel Defs.' Summ.
J. Mot. (ct. doc. 27).

This order addresses the motion of the stevedore defendants,
which is unopposed.

<u>BACKGROUND</u>

The facts set forth in this order are undisputed.  On
February 6, 2007, Mr. Maldonado was employed by the stevedore
defendants as a lasher, a longshoreman who assists in the loading
and unloading of cargo from ships.  <u>See</u> Stevedore Defs.' Rule
56.1 Statement (ct. doc. 26, Ex. 2) at ¶ 1; Decl. of John Atkins
("Atkins Decl.") (ct. doc. 26-8) at ¶ 10.  Mr. Maldonado arrived
for work around midnight to assist in loading the New Orleans
Express, which was docked at a marine terminal in Staten Island,
New York.  <u>See</u> Maldonado Depo. Tr. (ct. doc. 26, Ex. E) at 206-
07.  Several hours into his shift, Mr. Maldonado was directed to
Bay 38 to lash a refrigerated container (called a "reefer") with
another lasher, Daniel Wisniewaki.  <u>See</u> <u>id.</u> at 33-34, 134-37.
While Mr. Maldonado was working in Bay 38, the cranes that
provided lighting for the ship moved from that bay to a different

part of the ship, so he was relying on his helmet light to see. See id. at 154-55, 157.  Mr. Maldonado claims that when he reached for a turnbuckle,[1] he was shocked by a torn electrical cable that was tangled around the turnbuckle.  See id. at 157-58, 170.  He briefly lost consciousness and has since suffered lasting pain, physical impairments and emotional distress.  See id. at 170-71, 184-86, 227-28, 230-34, 236-39.

After completion of discovery, the vessel defendants moved for summary judgment.  Plaintiffs have not filed a response to the stevedore defendants' summary judgment motion but have moved for sanctions against the vessel defendants for spoliation of evidence based on the loss of the broken electrical cable.  See Pl's Mot. for Sanctions (ct. doc. 30).

For the reasons that follow, the stevedore defendants' motion for summary judgment is granted.

<u>DISCUSSION</u>

Summary judgment is appropriate pursuant to Fed. R. Civ. P. 56 when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Citizens Bank of Clearwater v. Hunt, 927 F.2d 707, 710 (2d Cir. 1991) (citations omitted); see Anderson v. Liberty Lobby,

---

[1] A turnbuckle is a piece of equipment that is used to lash or stow cargo containers on a ship.  See ct. doc. 26, ex. E at 20-21, 24-25.

Inc., 477 U.S. 242, 248 (1986); Golden Pacific Bancorp v.
F.D.I.C., 375 F.3d 196, 200 (2d Cir. 2004).  The moving party
bears the initial burden of demonstrating an absence of material
facts and once it has done so, the burden shifts to the non-
moving party.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23
(1986).  In determining whether there is a genuine issue of
material fact, the court must resolve ambiguities and draw
inferences in favor of the non-moving party.  Id.; Zalaski v.
City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir.
2010); Gallo v. Prudential Residential Servs., Ltd. Partnership,
22 F.3d 1219, 1223 (2d Cir. 1994).  Once the moving party has met
its burden, the opposing party "must do more than simply show
that there is some metaphysical doubt as to the material
facts . . . [T]he nonmoving party must come forward with
'specific facts showing that there is a genuine issue for
trial.'"  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P.
56(e)).

The Second Circuit has held that "[e]ven when a motion for
summary judgment is unopposed, the district court is not relieved
of its duty to decide whether the movant is entitled to judgment
as a matter of law."  Vermont Teddy Bear Co. v. 1-800 Beargram
Co., 373 F.3d 241, 242 (2d Cir. 2004); see also LeSane v. Hall's
Sec. Analyst, Inc., 239 F.3d 206, 210-11 (2d Cir. 2001).  The
district court must "ensure that each statement of material fact
is supported by record evidence sufficient to satisfy the

-4-

movant's burden of production even if the statement is
unopposed," but a party failing to respond "runs the risk" that a
movant's statement of undisputed facts supported by the record
will be deemed admitted.  <u>Jackson v. Federal Exp.</u>, 766 F.3d 189,
194 (2d Cir. 2014) (citations omitted).

This Court agrees with the stevedore defendants that the
LHWCA exclusively governs their liability and that they have
satisfied their obligation as employers under the statute.  <u>See</u>
Stevedore Defs.' Ans. at ¶¶ 49-50; Stevedore Defs.' Summ. J. Mem
(ct. doc. 26-4) at 2-4.  LHWCA enables a maritime worker or
longshoreman injured on the job to receive compensation from an
employer, owner or <u>pro hac vice</u> owner of a vessel.
33 U.S.C. § 901, <u>et seq</u>.  However, the statute limits the
liability of an employer to the compensation plan described in
§ 904, which requires an employer to compensate an eligible
employee for accidental injury, disability, occupational disease
or death, regardless of fault.  <u>Id.</u> at §§ 902(2), 904(a), 904(b),
905(a), 907(a).  An eligible person is permitted to bring an
action for negligence against a vessel, but he may not recover
for injury caused by the stevedore's negligence or for injury
caused by alleged unseaworthiness of the vessel.  <u>Id.</u> at § 905.
In describing the legislative history of LHWCA, the Supreme Court
noted that one major goal of the 1972 statutory reform was to
reduce the amount of liability faced by stevedores from vessel
owners following an award of damages to an employee for an injury
sustained aboard a ship.  <u>See</u> <u>Scindia Steam Nav. Co., Ltd. v. De</u>

<u>Los Santos</u>, 451 U.S. 156, 164-65 (1981).

The Second Circuit has identified several tests, depending on the circumstances, for determining who should be considered an employer under the LHWCA and similar labor statutes: the relative nature of the work, the right to control details of the work, the Second Restatement of Agency § 220(2), and the borrowed employee test.  <u>See</u> <u>American Stevedoring Ltd. v. Marinelli</u>, 248 F.3d 54, 61 (2d Cir. 2001).

The "relative nature" test looks at two factors: 1) the nature of the claimant's work, which is analyzed according to the skill required for the work, the degree to which the work constitutes a separate enterprise and the extent to which a worker is expected to carry his own accident burden; and 2) the relation of the claimant's work to the employer's business, which is determined according to whether the work is a regular part of the employer's enterprise, whether the work is intermittent or continuous and whether the duration of the work makes the engagement analogous to hiring as opposed to contracting.  <u>See</u> <u>id.</u> at 62-63.

Under the second test, courts focus on whether the master has the right to control the details of the employees' work.  The elements of this test are: the right to control the details of the work, the method of payment, the furnishing of equipment, and the right to fire.  <u>See</u> <u>id.</u> at 62 n.10.  The third test, which is derived from the Second Restatement on Agency, similarly requires consideration of "the extent of control which . . . the master

may exercise over the details of the work."  See id. at 62 n.11.

Finally, under the borrowed servant test, while courts may

consider "a variety of factors," the "primary inquiry [is]

whether the borrowing employer has authoritative direction and

control over a worker."  See id. at 64 (internal citations

omitted).

　　　As a preliminary matter, it is undisputed that the moving

defendants are in the stevedoring business and operate a marine

terminal in Staten Island known as the New York Container

Terminal.[2]  See Atkins Decl. at ¶ 7.  By conducting longshoring

operations, they are engaged in maritime employment, as defined

in the LHWCA as maritime employment.  See 33 U.S.C. § 902(3);

see also Health and Safety Regulations for Longshoring, 29 C.F.R.

§ 1918.2; Stevedoring and Terminal Services Agreement (ct. doc.

29, Ex. I) at 3, 8-9.  Furthermore, the Second Circuit has held

that "any employment that is an integral or essential part of

loading or unloading a vessel" shall be considered maritime

employment.  American Stevedoring, 248 F.3d at 58.  Lashers are

responsible for securing and releasing containers in a ship's

cargo for the purpose of loading or unloading them and therefore

are essential to this process.  See Maldonado Depo. Tr. at 20-21.

Thus Mr. Maldonado, who was employed as a lasher and was

performing work as a lasher at the time of the accident, is also

_____

　　　[2] Between 1995 and 2005, the New York Container Terminal was
known as Howland Hook Marine Terminal, Inc.  Ct. doc. 26,-3 at
¶ 4.

subject to the LHWCA.  Maldonado Depo. Tr. at 19-23; 35-39.

Having filed no opposition, plaintiffs and the vessel defendants do not directly dispute the contention of the stevedore defendants that plaintiff Francisco Maldonado was employed by NYCT.  However, plaintiffs allege in the complaint and in their memorandum in opposition to the motion of the vessel defendants that Mr. Maldonado's employer was Island Securing and Maintenance, Inc. ("ISM").  Compl. at ¶ 17; ct. doc. 33 at 2; see Maldonado Depo. Tr. at 20-21.  After review of the submissions, this Court finds that the stevedore defendants clearly qualify as Mr. Maldonado's employer, fitting the definition of employers as described in the LHWCA and generally under maritime law.  As they explain, although Mr. Maldonado was paid from an account belonging to an entity called ISM, ISM is an alter-ego of the stevedore defendants that was created solely for the purpose of managing the payroll of employee longshoremen and lashers who belong to the International Longshoreman Association ("ILA") Local 1814.  See Atkins Decl. at ¶¶ 10, 18.  After generating the payroll for ILA Local 1814 employees, NYCT transferred funds to ISM to cover that payroll.  Id. at ¶ 34.  ISM is wholly owned by NYCT, and has the same directors and officers as its parent.  Id. at ¶¶ 15-17.

In contrast to the limited role of ISM, the stevedore defendants establish without dispute that NYCT directed and controlled the lashing worked performed at its terminal, while ISM never engaged in any activity at the NYCT's terminal.  Id.

¶¶ 10, 19.  In fact, ISM did not engage in any activity other than issuing paychecks to ILA Local 1814 employees, having neither its own assets, bank account or office.  Id. at ¶¶ 5, 8, 22-24, 26, 34-35.  In short, ISM is nothing more than a vehicle for paying employees belonging to ILA Local 1814, including lashers such as Mr. Maldonado.  Atkins Decl. at ¶ 11.  Since the undisputed facts show that ISM merely pays wages, and the stevedore defendants controlled work at the terminal, I find that the stevedore defendants have established they were the employers of Mr. Maldonado.  See Marinelli, 248 F.3d at 62 (role in payment not, in itself, sufficient to show control).

The stevedore defendants argue in the alternative that even if Mr. Maldonado were considered an employee of ISM, he was a special employee or "borrowed servant" of the stevedore defendants and therefore barred from pursuing a lawsuit against them because he has received compensation as mandated by LHWCA. See Defs.' Mem. at 20-23.  Again, neither Mr. Maldonado nor the vessel defendants have offered any argument to the contrary. Notably, Mr. Maldonado filed for, and received, workers compensation benefits as an eligible maritime employee under the LHWCA.  Ct. doc. 26, Ex. 3 at 4.  The stevedore defendants not only provided the funds for Mr. Maldonado's wages and benefits under a collective bargaining agreement, they furnished him with equipment for his work and storage facilities, directed when and where he worked, employed about two dozen other lashers, coordinated cargo operations at the terminal, provided longshore

workers to vessels as part of their regular services, and disciplined workers such as Mr. Maldonado.  <u>See</u> Depo. Tr. of Anabel Pitre dated June 29, 2009 (ct. doc. 29, Ex. G at 16-17). Under such circumstances, there can be no doubt that Mr. Maldonado was employed by the stevedore defendants directly or, at the very least, as a special employee.

Because the stevedore defendants are engaged in maritime employment, were Mr. Maldonado's employer, and have compensated him according to the compensatory plan set out in the LHWCA, Mr. Maldonado is barred from pursuing any claims against them.  The vessel defendants are likewise barred from recovering against the stevedore defendants by the terms of the LHWCA, which states that, if a plaintiff succeeds in proving a defendant vessel's negligence and establishing damages, a stevedore defendant as plaintiff's employer "shall not be liable to the vessel for such damages directly or indirectly."  33 U.S.C. § 905(b).

Finally, because Ms. Maldonado's claims are derivative of Mr. Maldonado's, they cannot survive after his are dismissed. <u>See</u> <u>Griffin v. Garratt-Callahan Co.</u>, 74 F.3d 36, 40 (2d Cir. 1996).

<u>CONCLUSION</u>

For the foregoing reasons, the stevedore defendants' motion for summary judgment is granted.  Accordingly, the claims of plaintiffs Francisco Maldonado and Bridgette Maldonado, the cross claims of Hapag-Lloyd Ships, Ltd., Hapag-Lloyd A.G. and Hapag-Lloyd Container Line GMBH against New York Container

Terminal, Inc. and Howland Hook Container Terminal Inc. and the cross claims of New York Container Terminal, Inc. and Howland Hook Container Terminal against Hapag-Lloyd Ships, Ltd., Hapag-Lloyd A.G., and Hapag-Lloyd Container Line GMBH are hereby dismissed.

The Clerk of the Court is respectfully requested to enter judgment accordingly.

**SO ORDERED.**

Dated:     Brooklyn, New York
           March 31, 2015

                          __/s/_____
                          MARILYN DOLAN GO
                          UNITED STATES MAGISTRATE JUDGE