```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
```

- - - - - - - - - - - - - - - - - - -X

FRANCISCO MALDONADO and BRIDGETTE
MALDONADO

                            Plaintiffs,

      - against -                ORDER

HAPAG-LLOYD SHIPS, LTD., HAPAG-LLOYD    CV 2009-0018 (MDG)
A.G., HAPAG-LLOYD CONTAINER LINE GMBH,
NEW YORK CONTAINER TERMINAL, INC.,
HOWLAND HOOK CONTAINER TERMINAL, INC.,
M/V NEW ORLEANS EXPRESS,

                            Defendants.

- - - - - - - - - - - - - - - - - - -X

Plaintiffs Francisco and Bridgette Maldonado bring this action against defendants New York Container Terminal, Inc. ("NYCT") and Howland Hook Container Terminal, Inc. (collectively, the "stevedore defendants") and against Hapag-Lloyd Ships, Ltd., Hapag-Lloyd A.G. and Hapag-Lloyd Container Line GmbH (collectively, the "vessel defendants") and, in rem against M/V New Orleans Express. Asserting claims under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 et seq., the general maritime law and New York state law, Compl. (ct. doc. 1), ¶ 10, plaintiffs seek damages arising from injuries allegedly sustained by Mr. Maldonado while working as a lasher aboard the vessel New Orleans Express, which is owned by the vessel defendants.

Both sets of defendants disclaim liability for any injuries incurred by Mr. Maldonado and have asserted cross-claims against each other for contribution or indemnification. See Vessel Defs.'

Ans. (ct. doc. 9), ¶¶ 59-60, 77-78; Stevedore Defs.' Ans. (ct. doc. 13), ¶¶ 51-53. After all parties consented to trial before me, see Consent to Jurisdiction (ct. doc. 25), both sets of defendants moved for summary judgment as to plaintiffs' complaint and the counterclaims asserted against them. See Stevedore Defs.' Summ. J. Mot. (ct. doc. 26); Vessel Defs.' Summ. J. Mot. (ct. doc. 27). Plaintiffs also moved for spoliations sanctions against the vessel defendants on the grounds that critical evidence relating to the accident was removed by the ship's crew.

## BACKGROUND

The facts relevant to the instant motion are more fully set forth in a separate order issued granting the stevedore defendants' motion for summary judgment. See ct. doc. 39.

On February 6, 2007, Mr. Maldonado was employed by the stevedore defendants as a lasher, a longshoreman who assists in the loading and unloading of cargo from ships. See Stevedore Defs.' Rule 56.1 Statement (ct. doc. 26, Ex. 2), ¶ 1; Decl. of John Atkins ("Atkins Decl.") (ct. doc. 26-8) at ¶ 10. Mr. Maldonado arrived for work around midnight to assist in loading the New Orleans Express, which was docked at a marine terminal in Staten Island, New York. See Maldonado Depo. Tr. (ct. doc. 26, Ex. E) at 206-07. Several hours into his shift, Mr. Maldonado was directed to Bay 38 to lash a refrigerated container (called a "reefer") with another lasher, Daniel Wisniewski. See id. at 33-34, 134-37. While Mr. Maldonado was working in Bay 38, the

cranes that provided lighting for the ship moved from that bay to a different part of the ship, so he was relying on his helmet light to see.  See id. at 154-55, 157.  Plaintiffs claim that when Mr. Maldonado reached for a turnbuckle,[1] he was shocked by a torn electrical cable that was tangled around the turnbuckle. See id. at 157-58, 170.

Plaintiffs contend that while Mr. Maldonado was being assisted off the vessel after the accident, members of the vessel's crew removed the electrical cable from the scene of the accident.  Defendants did not produce the electrical cable for inspection during discovery.  Although several photographs of the electrical cable were taken by an employee of NYCT, plaintiffs argue that their expert cannot offer an opinion with a reasonable degree of engineering certainty as to the cause of the accident without examining the actual electrical cable.

DISCUSSION

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  Under Fed. R. Civ. P. 37(b), the court may impose sanctions for spoliation of evidence in violation of a court order.  See id.; John B. Hull, Inc. v. Waterbury Petroleum

---

[1] A turnbuckle is a piece of equipment that is used to lash or stow cargo containers on a ship.  See ct. doc. 26, ex. E at 20-21, 24-25.

Prods., Inc., 845 F.2d 1172, 1176 (2d Cir. 1988). "Even without a discovery order, a district court may impose sanctions for spoliation, exercising its inherent power to control litigation." West, 167 F.3d at 779; see Residential Funding Corp. v. DeGeorge Fin. Corp., 306 F.3d 99, 106-07 (2d Cir. 2002). Any sanction imposed should serve the threefold "aims of: (1) deterring future spoliation of evidence; (2) protecting the defendants' interests; and (3) remedying the prejudice defendants suffered . . . ." West, 167 F.3d at 780. "The determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge and is assessed on a case-by-case basis." Fujitsu Ltd. v. Federal Express Corp., 247 F.3d 423, 436 (2d Cir. 2001).

A party seeking a sanction for spoliation of evidence must establish "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed 'with a culpable state of mind;' and (3) that the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Residential Funding, 306 F.3d at 107; see Fujitsu, 247 F.3d at 436. "'Destruction of potentially relevant evidence obviously occurs along a continuum of fault ranging from innocence through the degrees of negligence to intentionality. The resulting penalties vary correspondingly.'" Townes v. Cove Haven, Inc., 2003 WL 22861921, at *3 (S.D.N.Y. Dec. 2, 2003) (quoting Welsh v.

United States, 844 F.2d 1239, 1246 (6th Cir. 1988)).

(1) Duty to Preserve

As to the first criteria, "[t]he obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." Fujitsu, 247 F.3d at 436; see Kronisch v. United States, 150 F.3d 112, 127 (2d Cir. 1998). "[A]nyone who anticipates being a party or is a party to a lawsuit must not destroy unique, relevant evidence that might be useful to an adversary." Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 217 (S.D.N.Y. 2003). "If a party cannot fulfill this duty to preserve because he does not own or control the evidence, he still has an obligation to give the opposing party notice of access to the evidence or of the possible destruction of the evidence if the party anticipates litigation involving that evidence." Silvestri v. General Motors Corp., 271 F.3d 583, 591 (4th Cir. 2001).

The vessel defendants argue that they had no control over the electrical cable because that area of the ship had been turned over to the control of the NYCT stevedores. However, plaintiff presents evidence that the vessel's crew removed the electrical cable from the scene of the accident. Daniel Wisniewski, a fellow lasher, testified that he saw crew members take the electrical cable away from the area of the accident in the direction of a maintenance room. See Wisniewski Dep. (ct. doc. 32-2) at 139, 145, 155-59. In fact, Mr. Wisniewski yelled

at the crew members as they carried away the electrical cable because they took it away so quickly. Id. at 143, 145, 156. While the vessel defendants suggest that Mr. Wisniewski assumed that the men he saw were crew members because they were wearing white and there is no evidence to establish that only crew members wore white, Mr. Wisniewski was unequivocal that the men he witnessed removing the electrical cable were crew members. However, plaintiffs offer no testimony from the several other NYCT witnesses at the scene confirming that defendants' crew members disconnected and removed the live cable. Despite the fact that Mr. Wisniewski may have some bias in favor of Mr. Maldonado given their prior relationship, in the absence of any evidence by defendants specifically countering Mr. Wisniewski's testimony, I find for purposes of this motion that the vessel defendants, as the party in possession of the evidence, had a duty to preserve the electrical cable after the accident.

(2) Culpable State of Mind

Although culpability may be found where a party intentionally destroyed evidence or acted in bad faith, the requisite state of mind may sometimes be satisfied by a showing of ordinary negligence. Residential Funding, 306 F.3d at 101. Since the failure to produce evidence occurs "along a continuum of fault," the determination of the degree of culpability required to support a finding of spoliation must be made on a case by case basis. Reilly v. Natwest Markets Group Inc., 181 F.3d 253, 267 (2d Cir. 1999) (citation omitted). Such an

approach affords trial judges the "leeway to tailor sanctions to insure that spoliators do not benefit from their wrongdoing -- a remedial purpose that is best adjusted according to the facts and evidentiary posture of each case." Id.

Although there is no evidence as to what happened to the electrical cable after it was removed by the vessel's crew members, I do not find that the vessel owners acted with a "culpable state of mind" sufficient to warrant sanctions. The vessel's Electrical Officer testified that he did not know what happened to the electrical cable. See Bhardwaj Dep. (ct. doc. 32-9) at 98. When the Marine Department and the Reefer Department went on the vessel after the accident, they could not find the electrical cable. See Fallon Dep. (ct. doc. 30-3) at 71, 117. There is no evidence to suggest that the vessel owners intentionally discarded the electrical cable. More likely, if the crew members removed the electrical cable, it was because the cable was a potential hazard to the workers in the area. However, ordinary negligence is sufficient to warrant a spoliation inference. See Residential Funding, 306 F.3d at 108.

(3) Relevance

In this context, relevance means more than sufficiently probative to satisfy Fed. R. Evid. 401. See Residential Funding, 306 F.3d at 108-09. "Where a party destroys evidence in bad faith, that bad faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude that the missing evidence was unfavorable to that party." Residential

Funding, 306 F.3d at 109. "Similarly, a showing of gross negligence in the destruction or untimely production of evidence will in some circumstances suffice, standing alone, to support a finding that the evidence was unfavorable to the grossly negligent party." Id. When the spoliation is caused by negligence, the party claiming spoliation must submit extrinsic evidence sufficient to infer that the destroyed evidence would have supported its claims. See id. at 107-09; Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 108-10 (2d Cir. 2001); Zubulake, 220 F.R.D. at 220.

Here, the missing electrical cable would have been relevant to both parties in establishing their cases on liability. The vessel owners contend that the cable was a reefer cable broken by the negligence of the stevedore defendants. Plaintiffs contend that the electrical cable was an extension cord connected to the vessel's electrical outlet and left in place by the negligence of the vessel's crew members. Plaintiffs further contend that inspection of and testing of the electrical cable would potentially show what type of cable was involved, how it was severed and why it remained live. See Certification of Arthur Archibald ("Archibald Cert.") (ct. doc. 30-4) at ¶ 5. However, plaintiffs have not described how inspection of the cable at issue would be probative of any of these issues.

Plaintiff's fellow lashers, Mr. Wisniewski and Mr. Governara, both described the electrical cable as a reefer cable. See Wisniewski Dep. at 154; Governara Dep. (ct. doc. 32-4) at 64-

66, 96. Mr. Wisniewski also testified that reefer wires are typically the type of electrical wires that lashers work around. See Wisniewski Dep. at 46. There is no extrinsic evidence submitted that would suggest that had the electrical cable been preserved it would have been more likely to support plaintiffs' theory that it was used for deck work and left behind by the vessel's crew members. Indeed, the sole basis for plaintiffs' expert's belief that the electrical cable was not a reefer cable appears to be his experience that all reefer cables are yellow or blue, while the cable at issue was black. See Archibald Cert., Ex. A at 3. On the contrary, the vessel defendants' expert states that photos taken on the New Orleans Express show that the reefer cords used on the vessel were black. See Certification of Charles R. Cushing (ct. doc. 32-10) at ¶ 9.

Moreover, since there are photos of the electrical cable from the scene of the accident, the parties have some basis on which to argue the type of cable at issue and how it may have been used. The parties also have the testimonies of Mr. Wisniewski and Mr. Governara as to what they observed regarding the cable. Under these circumstances, sanctions are not warranted.

CONCLUSION

For the foregoing reasons, plaintiffs' motion for spoliation sanctions is denied.

**SO ORDERED.**

Dated:   Brooklyn, New York
         May 1, 2015

                                    __/s/_____
                                    MARILYN DOLAN GO
                                    UNITED STATES MAGISTRATE JUDGE